1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA          | Case No.: 1:10-CR-00170-JLT

12 |                Plaintiff,        | ORDER DENYING MOTION FOR EARLY
                                        TERMINATION OF SUPERVISED RELEASE
13 |          v.
                                        (Doc. 69)
14 | RAY WESLEY GRANT,

15 |                Defendant.

16

17       Mr. Grant moves the Court for an order terminating his supervised release early. He has

18   been under supervision for approximately 11-and-a-half years due to his conviction for

19   possessing child pornography. For the reasons set forth below, the motion is **DENIED**.

20       **I.  Background**

21       Mr. Grant was charged by Information with a violation of 18 U.S.C. § 2252(a)(4)(B) on

22   May 6, 2022. (Doc. 1) The next day, he plead guilty to the offense after entering into a plea

23   agreement. (Doc. 2) In the plea agreement, he admitted that for more than three years, from 2005

24   through 2008, he possessed images of children engaged in sexually explicit conduct. *Id*. at 6. The

25   government agreed, in the plea agreement, to recommend that the Court sentence Mr. Grant to 24

26   months in prison followed by 120 months of supervised release. *Id*. at 6. In exchange, Mr. Grant

27   agreed that he would not ask the Court to impose a sentence of less than 24 months. *Id*. at 5. In

28   doing so, Mr. Grant agreed "that an additional component of an overall reasonable sentence will

1    be a term of supervised release of 120 months." *Id*.

2       At the sentencing hearing, the Court observed that the sentence was "light" compared the

3    conduct at issue. (Doc. 8 at 4-5) The Court told Mr. Grant, "that these are real people, they are

4    real children, and they are real issues. And there is real devastation to a child being touched or

5    forcing to be touching someone else in the manner that they can never reconcile for the rest of

6    their lives." *Id*. at 7. Nevertheless, due to the significant community support (Doc. 8 at 3-5), the

7    The Court adopted the recommendation of the parties and sentenced Mr. Grant to 24 months in

8    custody followed by 120 months of supervised release. (Doc. 7)

9       Mr. Grant completed his term of incarceration and began supervision on February 23,

10   2012. (Doc. 10 at 1) The Court found Mr. Grant violated his supervision when he admitted to

11   possessing pornography, having unapproved contact with minors, and failing to cooperate in sex

12   offender treatment. (Doc. 10 at 2; Doc. 25) On September 14, 2015, the Court sentenced him to

13   time served. (Doc. 28) By this time, he had been in custody for about two months. (Doc. 12) The

14   Court told Mr. Grant, "I don't know how to tell you this any other way, but you are about ready to

15   go to prison for the maximum of two years if there's anything more that's going on with any

16   violation." (Doc. 51 at 3) The Court continued, "I'm not big on threats. I'm big on laying it out

17   and exposing all of it in daylight. And I'm telling you if there are any more violations here, you

18   are going to prison for a maximum of two years. I'm going to do that. Now, you've got to figure

19   this out. You don't seem stupid to me, but this seems stupid of what you did. *Id*. at 4.

20       Mr. Grant's attorney responded, "I think I've set forth what I needed to set forth in the

21   sentencing memorandum. Mr. Grant and I have spent considerable time together. And he

22   understands exactly what the Court means in terms of what you said today." (Doc. 51 at 4) The

23   Court ordered that Mr. Grant was to have no contact with Bryona Tidwell without prior approval

24   of the probation officer. (Doc. 29; Doc. 51 at 5))

25       A year later, the Probation Officer reported to the Court that when he visited Mr. Grant's

26   home, he found a baby bag and found that Bryona Tidwell had been staying at the home without

27   the Officer's approval. (Doc. 41 at 2) The Probation Officer planned to address the situation with

28   instructing Mr. Grant again about the terms of his supervision, increasing home visits and

increasing the number of counseling sessions. (Doc. 71 at 5) The Court agreed with the plan and took no formal action at that time. (Doc. 41 at 2)

Eight months later, Mr. Grant violated the terms of supervision. (Doc. 31; Doc. 41) Once again, the conduct at issue involved having contact with children and having contact with Bryona Tidwell. *Id.* By this time, Mr. Grant had failed to complete his polygraph exam on July 6, 2017, because he was so tired that he was falling asleep during the examination and could not follow the instructions of the examiner. (Doc. 31 at 3) Also, he provided a "significant response" to the question asking him whether he had unauthorized contact with minors. *Id.* His response was such that the examiner determined that he did not "pass" the examination. *Id.* The Court found true that Mr. Grant had unauthorized contact with minors and sentenced him to six months in custody and ordered him to complete 114 months of supervised release thereafter. (Doc. 49; Doc. 48 at 15-16)

The Court allowed Mr. Grant to remain out of custody for a short period to allow him to file the appeal that intended to file and to seek a stay of the order remanding him into custody. (Doc. 48 20) After Mr. Grant sought to have the Court stay the remand order pending the completion of the appeal, the Court denied the request. (Doc. 57) The Court observed,

> This Court is not convinced that there is any basis, factual or legal, upon which the Finding of Violation will be overturned. This Court IS convinced that absent the extraordinary and concentrated supervision by Probation IN THE SHORT TERM, that the Defendant IS a danger to minor children, and thus the LIMITED Order of 30 days to report.
> The Defendant has shown his inability and/or unwillingness to abide by the clear and obvious terms of his prior release conditions. At the factual hearing, this Court did not find credible that the several Probation Officers involved in his supervision had not told the Defendant in clear and no uncertain terms of his obligation not to be associated or around minor children after his conviction for serious and felonious behavior involving minor children. More to the point, the Court did not find the Defendant to be credible when he testified.

*Id.* at 2. Indeed, the Court of Appeals affirmed the Court's determination. (Doc. 66) The Court found that Mr. Grant had repeated contact with children despite knowing he was not permitted to do so. *Id.*

In his current motion, Mr. Grant seeks early termination of supervision because he is 70 years old and wishes "to live the remainder of his live without supervision." (Doc. 69 at 1) He argues that he has been law-abiding for the last seven years and has not failed a polygraph in

1    eight years. *Id*. at 2-3,

2         The government opposes his motion and argues first, that the requirement of 120 months

3    of supervision was part of the negotiated plea agreement and was necessary to the imposition of a

4    reasonable sentence. (Doc. 71 at 3-4) In particular, the government explains that Ms. Tidwell was

5    a drug user, who had suffered criminal convictions related to drugs, and with whom Mr. Grant

6    had been engaged in "an emotional and sexual relationship" with her and was found in Mr.

7    Grant's garage in June 2017, despite the Court explicitly ordering Mr. Grant to have no contact

8    with her without prior approval. *Id*. at 5. In addition, the government argues that Mr. Grant

9    admitted, during the 2017 violation proceedings to have had contact with at least 11 different

10   children, ranging in ages between 6 months old and 14 years old, without the approval of the

11   probation officer. *Id*. at 6. Thus, the government argues also that Mr. Grant's noncompliance in

12   the past justifies ongoing supervision.

13        **II.  Analysis**

14        The Court acknowledges its discretion to terminate supervision early in this case.  In

15   considering the motion, the Court notes, first, that the underlying offense was serious, and it

16   injures and risks the most vulnerable members of our society.

17        Second, Mr. Grant has repeatedly and knowingly failed to comply with terms of

18   supervision. He has, seemingly, persistently decided what he could do and not do and then blame

19   others, most notably the Probation Officers, for his failures. Due to this repeated conduct, the

20   Court imposed a term of supervised release after his last violation for a term of 114 months.

21        That he has not been found to have violated his supervision since he completed his last

22   term of incarceration in approximately April 2018, is not sufficient evidence to show that the

23   public would be adequately protected or that the interests of justice warrant the relief sought here.

24   Thus, after considering the § 3553(1) and § 3583(e)(1) factors, the motion for early termination of

25   supervised release is **DENIED**.

26

27   IT IS SO ORDERED.

28   Dated:   __October 23, 2024__

UNITED STATES DISTRICT JUDGE

4